**CITY OF TUCSON, Plaintiff–Appellee,**

v.

**U.S. WEST COMMUNICATIONS, INC., a Colorado Corporation, now known as Qwest Corporation, Defendant–Appellant,**

v.

**Martha Chase, ex rel State of Arizona, County Attorney for Santa Cruz County; County of Santa Cruz, Plaintiffs–Intervenors–Appellees.**

No. 00–16416.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2002.

Filed March 26, 2002.

---

Paul J. Mooney, (Argued and Briefed), Phoenix, AZ, for the defendant-appellant.

William Malone, (Argued and Briefed), Washington, DC, for the plaintiff-appellee.

Ronald M. Lehman, (Argued), Tucson, AZ, for the plaintiffs-intervenors-appellees.

Before: NOONAN, TROTT, Circuit Judges, and EZRA,[1] District Judge.

## OPINION

TROTT, Circuit Judge.

### OVERVIEW

U.S. West Communications, Inc., now Qwest Corporation ("Qwest"), appeals the district court's *Burford* abstention order remanding this quo warranto/declaratory judgment action to state court. In response, the City of Tucson ("Tucson") challenges our jurisdiction to hear Qwest's appeal. Because we conclude that: (1) the requirements for *Burford* abstention are not present, and (2) the Declaratory Judgment Act provides no bases for abstention, we reverse and remand for further proceedings in the district court.

### BACKGROUND

Tucson is a municipal corporation and a political subdivision of Arizona. Qwest is a public service corporation registered in Colorado with its principal place of business in Colorado. Qwest provides telecommunication services in Arizona, specifically in Tucson, and has done so for over 100 years. To provide these services, Qwest installed, and currently operates and maintains, equipment and facilities within the public rights-of-way of Tucson.

1. The Honorable David A. Ezra, Chief United States District Judge for the District of Hawaii, sitting by designation.

Tucson filed a complaint in Arizona Superior Court for quo warranto or in the alternative for declaratory relief, alleging Qwest "illegally usurped and continues to illegally usurp the franchise for the use of the public rights-of-way of the City of Tucson for the transaction of its telecommunications business." A franchise is a grant of the right to use public property in a particular way, and Tucson's quo warranto action asks "by what authority" is Qwest using Tucson's public property? Tucson's objective in bringing this action was to force Qwest to apply to use, and pay for its use, of the public rights-of-way in Tucson.

After removing the action to federal court on the basis of diversity jurisdiction, Qwest filed its answer, claiming it held a valid pre-statehood, statewide franchise and was therefore not required to obtain additional franchises from each Arizona city. Based on various abstention doctrines, Tucson moved to remand the case to state court.

The district court assigned the case to a magistrate judge, who recommended granting Tucson's motion to remand based on *Burford* abstention. In a subsequent Report and Recommendation, the magistrate judge confirmed the existence of subject matter jurisdiction but reiterated the recommendation to remand. The district court adopted the magistrate judge's two reports in its memorandum opinion and order and cited judicial discretion under the Declaratory Judgment Act as an alternative basis for declining jurisdiction. The Declaratory Judgment Act states that a court "may" declare the rights of the parties seeking such a declaration. Thus, the district court reasoned that the Act grants discretionary relief, and because the complaint sought such relief the court's decision to abstain was discretionary and "need not be supported by findings of exceptional or extraordinary circumstances"

as required under typical abstention doctrines. Qwest challenges the use of abstention as a valid basis for remanding the case.

## DISCUSSION

### I Appellate Jurisdiction Is Not Barred By 28 U.S.C. § 1447(d)

Tucson claims as a preliminary matter that 28 U.S.C. § 1447(d), which states that "[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise," prohibits appellate review of the district court's remand order. Yet, the language of " § 1447(d) must be read *in pari materia* with § 1447(c), so that only remands based on grounds specified in § 1447(c) are immune from review under § 1447(d)." *Things Remembered Inc. v. Petrarca,* 516 U.S. 124, 127, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). Section 1447(c) specifically refers to remands based on procedural defects in removal and lack of subject matter jurisdiction:

> A motion to remand the case on the basis of any defect in the removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

§ 1447(c). Thus, it is clear that non-jurisdictional, discretionary remands are not barred from appellate review. In *Quackenbush v. Allstate Insurance Co.,* the Supreme Court noted that § 1447(d) "interpose[d] no bar to appellate review" of a remand order based on *Burford* abstention. 517 U.S. 706, 711, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). More specifically, the Court held that, although a remand based on *Burford* abstention is not a typical final order, it is immediately appealable

under 28 U.S.C. § 1291. *Id.* at 711–12, 116 S.Ct. 1712.

 Here, the magistrate judge found subject matter jurisdiction based on diversity of citizenship: Tucson is an Arizona municipal corporation; Qwest is a citizen of Colorado; and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332; *see also Ames v. Kansas*, 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (1884); *Wilder v. Brace*, 218 F.Supp. 860, 863–65 (D.Me. 1963) (holding that a federal court with diversity jurisdiction can hear a state quo warranto action). According to its order, the district court remanded this case utilizing its "discretion to abstain ... based upon comity and wise judicial administration," grounds not specified in § 1447(c). Because the remand order was predicated upon abstention, appellate review is not barred by § 1447(d).

## II The Requirements For Abstention Have Not Been Met

### A. Standard of Review

 We review de novo whether the requirements for abstention have been met. *Fireman's Fund Ins. Co. v. Quackenbush*, 87 F.3d 290, 294 (9th Cir.1996). When the requirements for abstention are present, we review the district court's decision to abstain for an abuse of discretion. *Id.*

### B. *Burford* Abstention

 District courts have an obligation and a duty to decide cases properly before them, and "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Nevertheless, *Burford* abstention allows a federal district court to abstain from exercising jurisdiction if the case presents "difficult questions of state law bearing on

policy problems of substantial public import whose importance transcends the result in the case then at bar," or if decisions in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, 96 S.Ct. 1236; *see also Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

In *Burford*, the Sun Oil Company brought suit in federal district court, based on diversity jurisdiction, seeking to cancel the Texas Railroad Commission's grant of certain oil drilling permits, or in the alternative, to enjoin the operation of the new wells and prevent them from extracting more than their fair share of oil from the field. 319 U.S. at 317, 63 S.Ct. 1098; *Sun Oil Co. v. Burford*, 124 F.2d 467, 468 (5th Cir.1941), *vacated by* 130 F.2d 10 (5th Cir.1942). The federal district court dismissed the case, holding that prior precedent dictated that conservation cases, such as the one before it, should be relegated to state courts, even though the federal courts had jurisdiction. *Sun Oil Co. v. Burford*, 124 F.2d at 468. However, the Fifth Circuit Court of Appeals reversed the district court's dismissal upon rehearing and determined that a federal court with jurisdiction should decide all questions of law and fact necessary for a complete disposition of the case. *See Sun Oil Co. v. Burford*, 130 F.2d 10 (5th Cir.1942), *reversed by* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The Supreme Court agreed with the district court's dismissal, recognizing that, due to the "geologic realities" of oil and gas, Texas had created a comprehensive, centralized state regulatory system to conserve resources and allocate drilling rights. *Burford*, 319 U.S. at 318, 63 S.Ct. 1098. In addition, the Texas legislature had concentrated all direct reviews from the commission's orders in the

state district courts of Travis County, Texas. *Id.* at 326, 63 S.Ct. 1098. Considering the specialized system of state administration that affected issues of vital local concern, the Supreme Court affirmed the district court's dismissal of the case. *Id.* at 332–34, 63 S.Ct. 1098 ("The state provides a unified method for the formation of policy and determination of cases by the Commission and by the state courts.... Conflicts in the interpretation of state law, dangerous to the success of state policies, are almost certain to result from the intervention of the lower courts.").

 Since *Burford,* the Supreme Court has not "provide[d] a formulaic test for determining when dismissal under *Burford* is appropriate," but it has made it clear that "*Burford* represents an 'extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.'" *Allstate,* 517 U.S. at 727–28, 116 S.Ct. 1712 (quoting *Colorado River,* 424 U.S. at 813, 96 S.Ct. 1236). While district courts may abstain to avoid interfering with complex state administrative processes, abstention is not required "whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." *New Orleans Pub. Serv. Inc., v. Council for New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). Moreover, a district court cannot abstain merely because there are complex and difficult issues of state law involved in the controversy before it. *Meredith v. Winter Haven,* 320 U.S. 228, 236, 64 S.Ct. 7, 88 L.Ed. 9 (1943).

 Although the Supreme Court has not articulated a formulaic test to control the application of *Burford* abstention, the Ninth Circuit requires the presence of certain factors before a district court can abstain under *Burford. United States v. Morros,* 268 F.3d 695, 705 (9th Cir.2001).

Unfortunately, the district court did not have the benefit of *Morros* when making its decision. In *Morros,* we confirmed that the application of the *Burford* abstention doctrine requires:

> first that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

*Morros,* 268 F.3d at 705.

*Concentration of Suits and Special Competency of State Courts:*

 Tucson argues that Arizona's quo warranto relief is highly specialized and not within the routine experience of the federal courts. Tucson cites to the Arizona Constitution, the Arizona Revised Statutes, and the Tucson City Charter to demonstrate that there is a specialized administrative system of review of franchises best left to the Arizona courts. Ariz. Const. art XIII, § 4; Ariz. Const. art XV, § 3; Ariz. A.R.S. §§ 9–499.01 (establishing that a municipality may not grant a franchise without the consent of a majority of the qualified voters), 12–2041, –2042, –2043. We regretfully disagree.

Unlike *Burford,* we find no designation by Arizona's Constitution or statutes of any particular state court to review grants or denials of franchises within Arizona. We similarly discern no statewide franchising scheme. Multiple state courts address quo warranto actions involving franchise disputes, and a federal district court, sitting in diversity and applying the laws of Arizona, is as competent to hear this case as any state court. *See Ames,* 111 U.S. 449, 4 S.Ct. 437, 28 L.Ed. 482 (holding that

quo warranto was a civil action, properly heard by a federal court with federal question jurisdiction); *Wilder,* 218 F.Supp. at 863–65 (D.Me.1963) (explaining that a federal court with diversity jurisdiction could hear a quo warranto action).

*Disruption of the Establishment of a Coherent Policy:*

Tucson contends that abstention is appropriate because federal review would disrupt Arizona's efforts to establish a competitive · telecommunications system and effectuate de-monopolization of the industry. Yet, Qwest is not attacking de-monopolization as it attempted to do in *U.S. West Communications, Inc. v. Arizona Corp. Commission,* 197 Ariz. 16, 3 P.3d 936 (1999) (alleging the existence of a contract with the state granting Qwest a telecommunications monopoly and a breach of that contract). Accordingly, we agree with the magistrate judge that the main issue in this case is "whether [Qwest] has a valid telecommunications franchise with the state of Arizona that preempts the City of Tucson's franchise requirements." The existence of a franchise does not attack Arizona's emerging competitive telecommunications policy. That Qwest holds a state-granted franchise does not deprive Tucson of the right to grant franchises to other telecommunication companies, it only means Qwest does not have to apply to Tucson for a franchise it already has. While a pre-existing franchise may give Qwest a competitive advantage, the franchise's existence or non-existence is not an attack on public policy. Rather the question presented here is highly factual, and it can be decided by the federal district court.

In sum, because Arizona has not designated to a particular court the duty of resolving utility franchise disputes, and federal review does not disrupt public policy, *Burford* abstention was inappropriate.

## C. Thibodaux Abstention

Tucson relies on *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) to support the district court's decision to abstain from hearing this quo warranto action. In *Thibodaux,* the Supreme Court approved a district court's decision to abstain from hearing an eminent domain case where state law apportioning power between the city and the state was uncertain, and any decision by the federal district court would affect state sovereignty. 360 U.S. at 25, 30, 79 S.Ct. 1070. Here, however, state law is certain. Arizona case law has addressed the state's and municipalities' ability to grant franchises. A city does not have the exclusive right to grant franchises, rather "the power to grant franchises resides in the state; and a city, in granting a franchise, acts as agent for the state." *City of Mesa v. Salt River Project Agric. Improvement & Power Dist.,* 92 Ariz. 91, 373 P.2d 722, 730 (1962). Thus, the state is the principal and the city the agent, and either can grant a franchise under Arizona law.

Furthermore, the Arizona Supreme Court has stated that "[i]t is difficult for us to understand how from the nonexclusive right to grant a franchise can be implied a separate, distinct and exclusive right by a municipality of control of streets and alleyways to the exclusion of the interest of the state." *Id.* Therefore, the question for the district court to decide is not one unaddressed by the state supreme court, as it was in *Thibodaux,* but rather whether Arizona granted Qwest a statewide franchise, which it clearly had the power to do.

## D. Declaratory Judgment Abstention

 Beyond quo warranto, Tucson's complaint requests the alternate

remedy of declaratory judgment. Quo warranto, however, is the exclusive remedy when contesting a franchise in Arizona. *See Skinner v. City of Phoenix,* 54 Ariz. 316, 95 P.2d 424, 426–27 (1939) (finding that the legislature had provided a complete and ample remedy when there is a usurpation of the state's franchise in the nature of quo warranto and the declaratory judgment act did not change the exclusive remedy granted by the state legislature.) Therefore, under Arizona law, declaratory judgment was unavailable in this case, and abstention under the Declaratory Judgment Act was improper.

## CONCLUSION

The requirements for *Burford* abstention are not present, and declaratory relief was unavailable, therefore abstention under the Declaratory Judgment Act was also unavailable. We REVERSE and REMAND to allow the district court to address Qwest's motion to dismiss and, if necessary, to reach the merits of the case.