307 F.3d 794
 SOUTHERN CALIFORNIA EDISON COMPANY, Plaintiff-Appellee,
v.
Loretta M. LYNCH; Henry M. Duque; Richard A. Bilas; Carl W. Wood; Geoffrey F. Brown, Commissioners of California Public Utilities Commission, Defendants-Appellees.
Utility Reform Network, Defendant-Intervenor-Appellant.
Southern California Edison Company, Plaintiff-Appellee,
Reliant Energy Services, Inc.; Mirant Americas Energy Marketing, LP, Intervenors-Appellants,
v.
Loretta M. Lynch; Henry M. Duque; Richard A. Bilas; Carl W. Wood; Geoffrey F. Brown, Defendants.
Southern California Edison Company, Plaintiff-Appellee,
California Manufacturers and Technology Assn., Intervenor-Appellant,
v.
Loretta M. Lynch; Henry M. Duque; Richard A. Bilas; Carl W. Wood; Geoffrey F. Brown, in their official capacities as Commissioner of the California Public Utilities Commission, Defendants-Appellees.
 No. 01-56879.
 No. 01-56993.
 No. 01-57020.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 4, 2002.
 Filed September 23, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Robert E. Finkelstein and Randolph L. Wu, The Utility Reform Network, San Francisco, CA; Michael J. Strumwasser, Frederic D. Woocher, Johanna R. Shargel, Daniel J. Sharfstein, Strumwasser & Woocher LLP, Santa Monica, CA; for the defendant-intervenor-appellant.
 Terry J. Houlihan and Geoffrey T. Holtz, McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, CA; John C. Morrissey and Brian I. Cheng, McCutchen, Doyle, Brown & Enersen, LLP, Los Angeles; CA; for the intervenor-appellant Reliant Energy Services, Inc.
 Bryan A. Merryman and Lisa A. Cottle, White & Case LLP, Los Angeles, CA, for the intervenor-appellant Mirant Americas Energy Marketing, LP.
 Keith R. McCrea and Jim Bushee, Sutherland Asbill & Brennan LLP, Washington, DC, for the intervenor-appellant California Manufacturers and Technology Association.
 Gary M. Cohen, Arocles Aguilar, Harvey Y. Morris, and Carrie G. Pratt, Public Utilities Commission of the State of California, San Francisco, CA, for the defendants-appellees.
 Stephen Pickett, Barbara Reeves, and Kris G. Vyas, Southern California Edison Company, Rosemead, CA; Ronald L. Olson, John W. Spiegel, and Henry Weissmann, Munger, Tolles & Olson LLP, Los Angeles, CA; for the plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California; Ronald S.W. Lew, District Judge, Presiding. D.C. No. CV-00-12056-RSWL.
 Before: BROWNING, THOMAS and RAWLINSON, Circuit Judges.
 OPINION
 THOMAS, Circuit Judge.
 
 
 1
 In this appeal, we review the district court's order entering a stipulated judgment in an action brought by Southern California Edison Co. ("SoCal Edison"), an electric public utility that provides retail electric service in Southern California, against the Commissioners ("Commissioners") of the California Public Utilities Commission ("the Commission"), which regulates the rates, practices and services of SoCal Edison and other California public utilities. We affirm the judgment of the district court in part and certify questions based on California state law to the Supreme Court of California.
 
 
 2
 * The origins of the present controversy began in 1996 with the passage of Assembly Bill 1890 ("AB 1890"), which significantly restructured California's power industry. Act of September 23, 1996, 1996 Cal. Legis. Serv. 854, codified in Cal. Pub. Util.Code §§ 330-398.5. The idea animating AB 1890 was that deregulation would foster competition in electrical generation, which would ultimately provide better service and reduce the price of electricity to consumers. See generally Cal. Pub. Util.Code § 330.[1] Under prior law, the Commission set the retail electricity rates charged by utilities providing service in exclusive service territories. Id. at § 330(d). These regulated rates included reimbursement for the cost of constructing power plants and contractual obligations for the provision of electrical service. Id. at § 330(q). The goal of AB 1890 was to create a deregulated market in which price would be established by competition and consumers could select their electrical power supplier.
 
 
 3
 The legislature recognized that the transition from a regulated environment to a competitive market had the potential to leave the utilities with unrecoverable, or "stranded" costs. In general terms, stranded costs are those costs an electrical supplier incurs in anticipation of serving customers that later become unrecoverable because the supplier either cannot charge a rate that allows cost recovery or is unable to sell sufficient power. This most typically occurs when there is a shift in utility rate philosophy from a "cost plus rate of return" design to a market-driven rate. Ass'n of Pub. Agency Customers, Inc. v. Bonneville Power Admin., 126 F.3d 1158, 1180 (9th Cir.1997).
 
 
 4
 Of course, as we have observed, "the term `stranded costs' is something of a misnomer, for someone always pays for them." Id. Under AB 1890, the Commission was charged with the responsibility of calculating the amount of stranded costs. Cal. Pub. Util.Code § 367. The utilities were to recover their allowed stranded costs through individual cost-recovery plans during a transition period when rates were temporarily frozen, under the theory that the utilities would continue to make a profit. Id. at § 368. During this transition period, the utilities were also to dismantle their vertically-integrated operations by selling a large portion of their generation plants, and to sell the output of their remaining generation capacity to a wholesale clearinghouse known as the California Power Exchange Corporation ("CalPx"). Cal. Power Exchange Corp., 245 F.3d at 1114-15. During the transition period, the utilities were required to purchase power from CalPx on behalf of retail customers who had not elected to purchase power elsewhere. Id. at 1115. The demise of vertical integration, which was regulated by the state, subjected the utilities' purchases of wholesale power to the jurisdiction of the Federal Energy Regulatory Commission ("FERC"), which regulated CalPx as a public utility under the Federal Power Act. Id. at 1114.
 
 
 5
 In 2000, wholesale electricity prices skyrocketed, particularly in the CalPx spot markets. SoCal Edison, which was still subject to the retail rate freeze designed to lock in profit, incurred enormous debt because it was unable to pass its wholesale power costs onto its customers. Id. at 1115. SoCal Edison alleges that it incurred obligations of over $6.5 billion for wholesale electricity in excess of what it recovered in retail sales. A series of power emergencies ensued which threatened the continuous provision of electricity in California. Id. at 1115-16. FERC responded in a series of regulatory actions detailed in Cal. Power Exchange Corp. Id. at 1116-19. In 2001, the California legislature and the Commission took a series of steps to alleviate the power crisis, the result of which was to significantly alter the impact of AB 1890. However, SoCal Edison alleges that the legislation failed to improve SoCal Edison's dire financial condition because SoCal Edison was precluded by a Commission decision from recovering costs incurred during the rate freeze period.
 
 
 6
 As a result, SoCal Edison filed the instant action for injunctive and declaratory relief against the Commissioners. Among other theories, SoCal Edison alleged that the refusal of the Commission to increase its retail rates as SoCal Edison's wholesale rates rose was preempted under the federal filed-rate doctrine, which holds that a state is preempted from preventing the recovery in retail rates of costs incurred pursuant to FERC tariffs.
 
 
 7
 After some preliminary decisions by the district court, The Utility Reform Network ("TURN"), a non-profit organization devoted to protecting the interests of residential and small-commercial consumers of utility services, moved to intervene. The district court initially denied the motion, but eventually granted TURN permissive intervention. After further proceedings, the case was stayed by agreement of the Commission and SoCal Edison so that the parties could attempt to resolve their disputes. A settlement was negotiated and presented to the district court in the form of a stipulated judgment ("Stipulated Judgment"). Under the terms of the Stipulated Judgment, existing rates were to remain in effect for a two-year period to allow SoCal Edison to recover approximately $3.3 billion of its $6.3 billion loss during the prior rate-freeze period. TURN objected to the entry of the Stipulated Judgment. The district court allowed TURN one day to register its objections, and one day for SoCal Edison and the Commission to respond. After reviewing the objections, the district court approved the Stipulated Judgment. TURN appeals the entry of the Stipulated Judgment. Three other parties who were denied intervention appeal the district court's denial of their intervention motions.
 
 
 8
 We affirm the district court on all claims, except for the challenges founded on California state law, which we certify to the California Supreme Court.
 
 II
 
 9
 The district court did not err in denying the motions to intervene filed by Reliant Energy Services ("Reliant"), Mirant Americas Energy Marketing ("Mirant"), and the California Manufacturers and Technology Association ("CMTA") (collectively, "Proposed Intervenors"). Reliant and Mirant are wholesale generators of electricity. The CMTA is a trade association with approximately 800 manufacturing and technology companies owning and operating facilities in California. The district court's denial of intervention as of right is reviewed de novo, Waller v. Fin. Corp. of Am., 828 F.2d 579, 582 (9th Cir.1987), except for district court's determination of timeliness, a decision which we review for abuse of discretion. Cunningham v. David Special Commitment Ctr., 158 F.3d 1035, 1037 (9th Cir.1998). We review the district court's denial of permissive intervention for abuse of discretion. Venegas v. Skaggs, 867 F.2d 527, 529 (9th Cir.1989).
 
 
 10
 * The district court properly denied the Proposed Intervenors' motions to intervene as of right, pursuant to Rule 24(a), Federal Rules of Civil Procedure. An applicant for intervention in a pending federal action as a matter of right must satisfy four requirements, namely that: "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." United States v. City of Los Angeles, 288 F.3d 391, 397 (9th Cir.2002) (quoting Donnelly v. Glickman, 159 F.3d 405, 409 (9th Cir.1998) (internal quotation marks omitted)).
 
 
 11
 The district court correctly denied the Proposed Intervenors' motions to intervene as of right because they did not satisfy the first requirement: that they have a significant protectable interest relating to the property or transaction that is the subject of the action. We recently discussed the analytical framework for this requirement in City of Los Angeles, 288 F.3d at 398: "An applicant has a `significant protectable interest' in an action if (1) it asserts an interest that is protected under some law, and (2) there is a `relationship' between its legally protected interest and the plaintiff's claims." Donnelly, 159 F.3d at 409. The relationship requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant." Id. at 410. The "interest" test is not a clear-cut or bright-line rule, because "[n]o specific legal or equitable interest need be established." [Greene v. United States, 996 F.2d 973, 976 (9th Cir.1993).] Instead, the "interest" test directs courts to make a "practical, threshold inquiry," id., and "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980) (internal quotation marks and citation omitted).
 
 
 12
 Reliant and Mirant argue that they have a significant protectable interest in the litigation because SoCal Edison owes them over $260 million arising out of their wholesale electricity transactions which, allegedly due to the Commission's actions, SoCal Edison is unable to repay. The pending litigation would not resolve those claims, and SoCal Edison is in privity with the California Power Exchange Corporation, not with Reliant or Mirant. Thus, Reliant and Mirant are claiming a right to intervene based on a contingent, unsecured claim against a third-party debtor. This falls far short of the "direct, non-contingent, substantial and legally protectable" interest required for intervention as a matter of right. Dilks v. Aloha Airlines, 642 F.2d 1155, 1157 (9th Cir.1981) (citation omitted).
 
 
 13
 CMTA asserts that, as an association of more than 800 companies in the manufacturing and high-technology sectors, its members are "an integral part of the California economy" who "purchase significant quantities of electricity from SoCal Edison." However, "an undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." Public Serv. Co. of N.H. v. Patch, 136 F.3d 197, 205 (1st Cir.1998); see also Westlands Water Dist. v. U.S., 700 F.2d 561, 563(9th Cir.1983) (Environmental Defense Fund's interest in water district's water export rights is no different from interest of "substantial portion of the population of northern California" and is thus not "legally protectible" under Rule 24(a)). Thus, CMTA does not have the right to intervene in this case under federal law.
 
 B
 
 14
 The district court also did not err in denying Reliant, Mirant, and CMTA permissive intervention. "[A] court may grant permissive intervention where the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." City of Los Angeles, 288 F.3d at 403(quoting Northwest Forest Res. Council v. Glickman, 82 F.3d 825, 839 (9th Cir.1996)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." Donnelly, 159 F.3d at 412.
 
 
 15
 Here, Proposed Intervenors fail to meet the threshold requirements because no common question of law or fact exists between their claims and the main action. Proposed Intervenors argue that the amount of money that SoCal Edison may collect, and how SoCal Edison uses that money, raises questions of law and fact common to both the underlying action and any claims Reliant and Mirant have against SoCal Edison and/or the Commission. However, the Proposed Intervenors' concerns as to whether SoCal Edison would repay them are sufficiently different from the issues in the underlying action so as to not meet this factor of the test for permissive intervention. "The intervention rule is ... not intended to allow the creation of whole new lawsuits by the intervenors." Donnelly, 159 F.3d at 412(internal quotation marks and citation omitted).
 
 III
 
 16
 Reliant, Mirant, and CMTA argue in the alternative that, even if the district court did not err in denying their motions to intervene, they still have standing to appeal the entry of the Stipulated Judgment. We disagree.
 
 
 17
 A nonparty has standing to appeal a district court's decision "only in exceptional circumstances." Citibank Int'l. v. Collier-Traino, Inc., 809 F.2d 1438, 1441 (9th Cir.1987). We have allowed such an appeal only when "(1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." Bank of Am. v. M/V Executive, 797 F.2d 772, 774 (9th Cir.1986). Proposed Intervenors have not met these requirements. Apart from their applications for intervention, the Proposed Intervenors did not participate in the district court proceedings. By contrast, the appellant in Bank of Am. filed papers and presented oral argument to a magistrate judge and the district court on the merits of the case. Id. at 774. Further, there is nothing inequitable about limiting participation in this appeal to submission of amicus briefs. In short, there are no "exceptional circumstances" in this case that justify granting a non-party standing to appeal.
 
 IV
 
 18
 TURN argues that the Rooker-Feldman doctrine[2] precluded the district court from exercising original jurisdiction. The Rooker-Feldman doctrine is founded on "the unremarkable proposition that federal district courts are courts of original, not appellate, jurisdiction." Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1078 (9th Cir.2000) (en banc). It is based on negative inferences drawn from 28 U.S.C. § 1331, which establishes the district court's original jurisdiction, and 28 U.S.C. § 1257, which allows Supreme Court review of "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." Id. (internal quotation marks omitted). Applying these jurisdictional limitations, the Rooker-Feldman doctrine bars direct federal district court appellate review of state court judicial proceedings. See Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir. 1986).
 
 
 19
 TURN contends that the Rooker-Feldman doctrine applies here because SoCal Edison's lawsuit is "inextricably intertwined" with the actions of the Commission and because the Pacific Gas & Electric Company ("PG & E") sought state judicial review of the Commission's cost-recovery decisions.
 
 
 20
 The Rooker-Feldman doctrine does not apply to the actions of the Commission because it is a state administrative agency, not a court. The primary statute from which the Rooker-Feldman doctrine has been drawn — 28 U.S.C. § 1257 — does not, by its terms, describe state administrative decisions. More importantly, the Supreme Court has recently rejected a claim that the Rooker-Feldman doctrine barred federal district court review of adjudicatory decisions of state administrative agencies. As the Court noted:
 
 
 21
 The Commission also suggests that the Rooker-Feldman doctrine precludes a federal district court from exercising jurisdiction over Verizon's claim. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923). The Rooker-Feldman doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, see 28 U.S.C. § 1257(a). The doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency.
 
 
 22
 Verizon Md. Inc. v. Pub. Serv. Comm'n of Md., 535 U.S. 635, ___ n. 3, 122 S.Ct. 1753, 1759 n. 3, 152 L.Ed.2d 871 (2002) (emphasis added).
 
 
 23
 TURN also claims that a collateral state court judicial challenge to the Commission action filed by PG & E deprives the district court of jurisdiction over this case. This argument is unavailing. The Rooker-Feldman doctrine does not bar the exercise of federal court jurisdiction when the federal court litigant was not a party to the state court action. Johnson v. De Grandy, 512 U.S. 997, 1006, 114 S.Ct. 2647, 129 L.Ed.2d 775 (1994). SoCal Edison was not a party to PG & E's state court challenge; thus the Rooker-Feldman doctrine did not preclude the federal district court from exercising jurisdiction in this case.[3] SoCal Edison did file an amicus letter in support of PG & E's petition. However, "mere participation in the state case as amici does not invoke the Rooker/Feldman bar." Bennett v. Yoshina, 140 F.3d 1218, 1224 (9th Cir.1998). Thus, existence of collateral state court proceedings involving a third party did not deprive the district court of original jurisdiction over this action.
 
 V
 
 24
 TURN argues the district court should have abstained under the "Burford doctrine" from exercising jurisdiction over this lawsuit. See Burford v. Sun Oil Co., 319 U.S. 315, 332-33, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). We review whether the requirements for abstention have been met de novo, and the district court's decision whether to abstain for an abuse of discretion. Fireman's Fund Ins. Co. v. Quackenbush, 87 F.3d 290, 294 (9th Cir.1996).
 
 
 25
 "District courts have an obligation and a duty to decide cases properly before them, and `[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" City of Tucson v. U.S. West Communications, Inc., 284 F.3d 1128, 1132 (2002) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).
 
 
 26
 However, under the Burford abstention doctrine, when timely and adequate state court review is available, a federal court sitting in equity may decline to interfere with the proceedings or orders of state administrative agencies:
 
 
 27
 (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.
 
 
 28
 New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (internal quotation marks and citation omitted).
 
 
 29
 We have required certain factors to exist before a district court can abstain under Burford. See City of Tucson, 284 F.3d at 1133. These are:
 
 
 30
 first[,] that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.
 
 
 31
 Id. (quoting United States v. Morros, 268 F.3d 695, 705 (9th Cir.2001)).
 
 
 32
 Here, not only has the state not chosen to concentrate suits challenging the administrative action in a particular court, it has expressly waived any abstention defense to SoCal Edison's action and consented to the Stipulated Judgment. See Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc., 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986) ("A State may of course voluntarily submit to federal jurisdiction even though it might have had a tenable claim for abstention."). Thus, the threshold requirements for the exercise of Burford abstention by the district court have not been satisfied.[4] The fact that a non-state intervening party preferred another forum is not relevant to satisfying the prerequisites for Burford abstention. Cf. Southwest Airlines Co. v. Texas Intern. Airlines, Inc., 546 F.2d 84, 93 (5th Cir.1977). "If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 480, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977). The district court did not err in declining to abstain in this case.
 
 VI
 
 33
 The district court did not exceed its authority by approving the stipulated settlement between SoCal Edison and the Commission without TURN's consent, a decision which we review de novo. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir.1992). An intervenor does not have the right to prevent other parties from entering into a settlement agreement. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501, 528-29, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). As the Court explained:
 
 
 34
 [i]t has never been supposed that one party — whether an original party, a party that was joined later, or an intervenor — could preclude other parties from settling their own disputes and thereby withdrawing from litigation. Thus, while an intervener is entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.
 
 
 35
 Thus, TURN's consent was not a necessary precursor to the district court's accepting the Stipulated Judgment.
 
 
 36
 TURN points out that Firefighters provides an exception where "nonconsenting intervenors" have brought "valid claims" that are "properly raised." Id. at 529, 106 S.Ct. 3063. However, as TURN itself admits, the organization "as defendants were not expected to raise claims and [its] members cannot challenge the terms of the settlements in later suits." Instead, what TURN claims to possess is a "legally cognizable interest in protecting the refund rights of its 30,000 ratepaying members, in securing the lower rates that state law guarantees them and the stipulated judgment denies them, and in preventing the rate increases that will inevitably result from this judgment." These interests do not amount to the kind of "valid claims" the Firefighters Court had in mind. Furthermore, TURN's attempt to narrow the scope of the Firefighters exception as applying only to plaintiffs, and not defendants such as TURN, is unavailing because the Firefighters case clearly references "third part[ies]" in general. See Firefighters, 478 U.S. at 529, 106 S.Ct. 3063. In sum, TURN's consent was not required for the district court to approve the settlement.
 
 VII
 
 37
 Nor did the district court's approval of the settlement deny TURN due process. TURN argues that the district court did not afford it sufficient time to submit briefs opposing the proposed settlement.
 
 
 38
 District courts have "inherent power" to control their dockets. Ferdik v. Bonzelet, 963 F.2d 1258, 1260 (9th Cir. 1992). Our review of such decisions is deferential; we will reverse a district court's litigation management decisions only if it abused its discretion, see id., or if the procedures deprived the litigant of due process of law within the meaning of the Fifth or Fourteenth Amendments. See Barona Group of Capitan Grande Band of Mission Indians v. Am. Mgmt. & Amusement, Inc., 824 F.2d 710, 721-22 (9th Cir. 1987), amended by 840 F.2d 1394, 1405-06 (9th Cir.1988). Due process requires that a party affected by government action be given "the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (internal quotation marks and citation omitted). In analyzing the constitutional sufficiency of notice, we must consider:
 
 
 39
 [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 40
 Id. at 335, 96 S.Ct. 893.
 
 
 41
 Although the district court expedited the notice and hearing process in this case, TURN filed an extensive brief raising all of the salient issues. In turn, the district court required TURN's opponents to file their response brief on an expedited schedule, which they did. TURN does not quantify either the probable increased value of alternative procedures, or the risk of an erroneous deprivation of the interest through the procedures used. Indeed, TURN does not contend that it was prevented from presenting its case; its essential complaint is that the district court did not consider adequately the arguments that TURN made. However, that argument goes to the merits, not to procedural due process.
 
 
 42
 For the same reasons, TURN has not established prejudice. TURN has failed to demonstrate that the district court's scheduling order substantially prejudiced TURN's ability to present its arguments. See Fitch, 472 F.2d at 549 n. 5 U.S. v. Fitch, 472 F.2d 548, 549 n. 5 (9th Cir.1973)(rejecting challenge to contempt judgment based on insufficient notice where "[a]ppellants have shown no prejudice."); Hoffman for and on Behalf of NLRB v. Beer Drivers & Salesmen's Local Union No. 888, 536 F.2d 1268, 1273 (9th Cir.1976) (rejecting due process claim based on "insufficient notice of hearing" because "[t]here is no indication that the parties were not fully aware of the issues or were in any way deprived of a full opportunity to explore the issues of fact or be heard on the issues of law").
 
 
 43
 Given the totality of the circumstances of this case, we cannot say that the expedited briefing schedule deprived TURN of procedural due process.
 
 VIII
 
 44
 Contrary to TURN's assertion, the district court did not violate the Tenth Amendment in approving the Stipulated Judgment. The application of federal preemption, as sought by SoCal Edison in its complaint, would not intrude on the rights reserved under the Tenth Amendment. Further, "[t]o say that nothing in the Commerce Clause justifies federal regulation of even the intrastate operations of public utilities misapprehends the proper role of the courts in assessing the validity of federal legislation promulgated under one of Congress' plenary powers." FERC v. Mississippi, 456 U.S. 742, 753, 102 S.Ct. 2126, 72 L.Ed.2d 532 (1982). "If Congress has the constitutional authority to enact legislation, then the preemption question is whether Congress intended to displace state law in that area, not whether the existence of state law forbade Congress from regulating." United States v. Geiger, 263 F.3d 1034, 1040(9th Cir.2001) (citing Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 540-41, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001)).
 
 
 45
 The district court's approval of the Stipulated Judgment does not mandate state participation in the enforcement of a federal statutory scheme such as in Printz v. United States, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), nor require a state legislature to adopt federal regulations such as in New York v. United States, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992). Rather, the judgment simply confirms a settlement of a valid federal preemption claim. The Tenth Amendment cannot be used to bar enforcement of consensual judgments. United States v. District of Columbia, 654 F.2d 802, 808 (D.C.Cir.1981). In short, the district court had the power under Article III to approve a settlement over a suit alleging federal preemption, and did not unconstitutionally commandeer California's regulatory apparatus in doing so.
 
 IX
 
 46
 In sum, none of the substantive arguments based on federal statutory or constitutional law compel reversal of the district court's approval of the Stipulated Judgment. There is, however, a serious question of whether the agreement between the Commission and SoCal Edison violated state law, both in substance and in the procedure by which the Commission agreed to it. If so, then the Commission lacked capacity to consent to the Stipulated Judgment, and we would be required to vacate it as void. State officials cannot enter into a federally-sanctioned consent decree beyond their authority under state law. See Keith v. Volpe, 118 F.3d 1386, 1393 (9th Cir.1997) (consent decree could not be interpreted to supplant California Outdoor Advertising Act because state agency would not have had authority to agree to such a decree); Wash. v. Penwell, 700 F.2d 570, 573 (9th Cir.1983) (vacating a consent decree that required the state of Oregon to fund a prisoners' legal services program because the state Attorney General acted beyond his authority and therefore "the consent decree was void to the extent that it exceeded defendants' authority").
 
 
 47
 * On a substantive level, there is a serious question as to whether the Stipulated Judgment's ratemaking terms violate § 368 of AB 1890. California Public Utilities Code § 368 directed the Commission to set rates "at levels equal to the ... rate schedules as of June 10, 1996," to reduce those levels for residential and small-commercial customers by ten percent, and to maintain those rates until the utility has fully recovered its stranded costs or until March 31, 2002, whichever comes first. Cal. Pub. Util.Code § 368(a) (emphasis added). Section 368 explicitly states that the utility "shall be at risk for those costs not recovered during that time period." Id.
 
 
 48
 The Stipulated Judgment appears to violate § 368 in two respects. First, the settlement expressly maintains the ratefreeze beyond March 31, 2002, in violation of § 368, and the settlement expressly does so for the purpose of allowing SoCal Edison to recover its past procurement costs. The contested language of the Stipulated Judgment reads as follows:
 
 
 49
 The Parties hereby agree that during the Recovery Period [SoCal Edison] shall recover in retail electric rates its Procurement Related Obligations recorded in the PROACT [Account for Recovery of Procurement Related Obligations established pursuant to § 2.1(a) of the Agreement]. The Parties acknowledge that they each currently project that the maintenance of Settlement Rates will likely result in sufficient Surplus for [SoCal Edison] to recover substantially all of its unrecovered Procurement Related Obligations prior to the end of 2003.
 
 
 50
 Stipulated Judgment, § 2.2, emphasis added. The agreement defines "Recovery Period" as:
 
 
 51
 the period commencing September 1, 2001 and ending on the earlier of the date that [SoCal Edison] recovers all Procurement Related Obligations recorded in the PROACT or December 31, 2005. The Recovery Period includes the Rate Repayment Period.
 
 
 52
 Stipulated Judgment, § 1.1(q), emphasis added. These provisions appear to violate § 368, which clearly limits the utilities to March 31, 2002 and disallows SoCal Edison from applying collections past this date to prior procurement costs.
 
 
 53
 Second, the settlement also appears to violate § 368's rate-freeze guarantee that protects consumers from price increases during the transition to a competitive market. The Stipulated Judgment allows the SoCal Edison to "pocket" for itself the above-rate-freeze-level rates that the Commission adopted in 2001 solely in order to pay the state for wholesale power the California Department of Water Resources was procuring for the utilities. As a result, under the Stipulated Judgment, the SoCal Edison will collect a "surcharge" rate that is above the rates in effect on June 10, 1996, in violation of § 368.
 
 
 54
 The testimony of the Commission President Loretta Lynch, in response to the California Legislature's query as to why the Commission did not agree to the SoCal Edison — Commission settlement months earlier, supports this conclusion. She explained as follows:
 
 
 55
 MS. LYNCH: Well, actually the Commission is prevented under state law under 1890 from allowing that recovery, and what we did with the [SoCal Edison] settlement was essentially agree to a settlement that federal law trumped state law, but the Commission on its own could not trump state law. The Commission must follow state law.
 
 
 56
 We are not dissuaded by SoCal Edison's and the Commission's argument that, whatever restrictions § 368 may once have imposed on the Commission, subsequent legislative changes and Commission decisions have restored the Commission's traditional authority to permit utilities to recover their costs—specifically, those costs associated with its utility retained generation, which includes its nuclear power plants and contracts involving Qualifying Facilities—even after the AB 1890 rate freeze. Most notably, the Appellees cite Assembly Bill 6X ("AB 6X"), which in 2001 amended or deleted three provisions of AB 1890, which had previously provided for the transition from regulated status to unregulated status for utility generation.
 
 
 57
 However, AB 6X as well as Assembly Bill 1X ("AB 1X") were not intended to relieve the utilities of their regulatory bargain but rather to protect the state from further damage due to the utilities' imminent inability to meet their utility obligation of providing power to their customers. The Appellees' interpretation of AB 1X and AB 6X is contradicted by the fact that the legislature retained Cal. Pub. Util.Code §§ 367, 368(a), and repeals by implication are "heavily disfavored." See, e.g., NLRB v. Kolkka, 170 F.3d 937, 941 (9th Cir.1999). A finding of implied repeal must be based on a finding that the legislative body actually formulated the intent to repeal the earlier enactment but somehow failed to carry out that intent. Kenai Peninsula Borough v. State of Alaska, 612 F.2d 1210, 1214 (9th Cir.1980) ("There can be no implied repeal unless the intention of the legislative body to repeal is clear."). The legislative history here demonstrates no such intent. Moreover, there is nothing in the 2001 legislation that is inconsistent with the rate-freeze or with holding the utilities to the risk of not fully recovering stranded costs. Finally, both the Commission and SoCal Edison recognized, when AB 1X and AB 6X were enacted, that these acts left the utilities responsible for unrecovered stranded costs. Thus, on a substantive level, the Stipulated Judgment appears to violate state law.
 
 B
 
 58
 On a procedural level, there is a serious question as to whether the Stipulated Judgment violates state laws, specifically those requiring open government and readecisions reached upon an evidentiary record. It appears that the Commission adopted the agreement with SoCal Edison in violation of both the Bagley-Keene Open Meeting Act ("Bagley-Keene Act"), Cal. Gov't Code §§ 11120-11132.5, and § 454 of the Public Utilities Code.
 
 
 59
 First, the Stipulated Judgment seems to violate the Bagley-Keene Act because the parties approved it in a secret meeting. Section 11126(d)(1), in particular, requires that "[n]otwithstanding any other provision of law, any meeting of the Public Utilities Commission at which the rates of entities under the commission's jurisdiction are changed shall be open and public." Cal. Gov't Code § 11126(d)(1) (emphasis added). The Stipulated Judgment, which extinguished rate-payers' refund rights, precluded a reduction in rates that were otherwise subject to reduction, and granted SoCal Edison significant concessions for years to come, changes rates such that the open meeting requirement of § 11126(d)(1) is triggered.
 
 
 60
 SoCal Edison and the Commission argue that the Stipulated Judgment does not change existing rates. Rather, in their view, the agreement obligates the Commission to allow SoCal Edison to charge existing rates. But the provision of the agreement to which SoCal Edison cites merely defines the phrase "settlement rates" without saying anything about what the Commission is obligated to do. See Settlement Agreement, § 1.1(w).
 
 
 61
 The Commission has claimed that it could settle the litigation in a "closed session" pursuant to section 11126(e)(1) of the Government Code, which provides that:
 
 
 62
 [n]othing in this article shall be construed to prevent a state body, based on the advice of its legal counsel, from holding a closed session to confer with, or receive advice from, its legal counsel regarding pending litigation when discussion in open session concerning those matters would prejudice the position of the state body in the litigation.
 
 
 63
 Cal. Gov't Code § 11126(e)(1) (emphasis added). However, § 11126(e) merely allows the agency to meet in closed session "to confer with, or receive advice from, its legal counsel regarding pending litigation" —not to take action, and certainly not to issue regulatory orders. Id.
 
 
 64
 Second, the Commission appears to have violated Public Utilities Code § 454 with its decision to extinguish ratepayer refund rights and to lock in higher rates, without a public hearing and without findings. Section 454 provides that:
 
 
 65
 [e]xcept as provided in Section 455 [which deals with rate schedules not resulting in a rate increase], no public utility shall change any rate or so alter any classification, contract, practice, or rule as to result in any new rate, except upon a showing before the commission and a finding by the commission that the new rate is justified.
 
 
 66
 Cal. Pub. Util. Code § 454(a) (emphasis added). California case law also holds that the Commission must hold a hearing and issue findings before adopting an order that affects rates. See Cal. Mfrs. Ass'n v. Pub. Utils. Comm'n, 24 Cal.3d 251, 155 Cal.Rptr. 664, 595 P.2d 98, 102 (1979) (annulling the Commission rate-increase decisions for absence of supporting findings and evidence).
 
 
 67
 SoCal Edison and the Commission argued below that § 454 did not apply because the Commission was not changing rates but rather agreeing not to change rates. The Appellees make a similar argument on appeal; they maintain that § 454 applies only when a utility seeks to "increase" rates, not when a utility keeps existing rates in place, as they claim the Stipulated Judgment provides for.
 
 
 68
 However, this argument conforms neither to the text nor to the order or its result. First, as a textual matter, the SoCal Edison — Commission agreement does far more than just agree not to reduce rates. Under the Stipulated Judgment the Commission agrees not to penalize SoCal Edison for failing to meet the Commission's capital-structure requirements, not to "unreasonably withh[o]ld" consent to SoCal Edison's payment of dividends to shareholders, to allow SoCal Edison up to $900 million per year in rates for capital additions, to approve SoCal Edison compromising certain claims against wholesale-power sellers, and to announce that SoCal Edison may recover past costs that would not be recoverable under the TURN Accounting Proposal adopted by the Commission. Each of these constitutes a "change" in SoCal Edison's rate.
 
 
 69
 Second, as an economic matter the agreement will result in huge changes in the rates SoCal Edison customers will pay. Before the entry of the Stipulated Judgment, any over collection in rates was subject to refund under the Commission Decision 01-03-082. After the entry of the Judgment, it is not. TURN estimates that the SoCal Edison — Commission deal adds $3.3 billion to ratepayers' electric costs.
 
 C
 
 70
 As we have noted, as a matter of federal law, state officials cannot enter into a federally-sanctioned consent decree beyond their authority under state law. In addition, California agencies such as the Commission are explicitly prohibited by the state constitution from agreeing to be enjoined from enforcing state laws that have not been declared unconstitutional by an appellate court. Article III, section 3.5, of the California Constitution provides that:
 
 
 71
 [a]n administrative agency, including an administrative agency created by the Constitution . . . has no power ... (c) [t]o declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.
 
 
 72
 CAL. CONST. art. III, § 3.5. In assenting to the judgment here, the Commission ("an administrative agency created by the Constitution," see CAL. CONST. art. XII) was refusing to enforce both the substantive limits on the utilities' transition cost recovery and the procedures required of the Commission when making rate orders. By stipulating to the judgment, the Commission agreed not only to exempt SoCal Edison from AB 1890 but also to be enjoined from enforcing AB 1890. Thus, assuming our interpretation of California state law is correct, the Stipulated Judgment must be vacated as void.
 
 D
 
 73
 However, ours is not the final word on California state law. Federal courts are bound by the pronouncements of the state's highest court on applicable state law. Davis v. Metro Productions, Inc., 885 F.2d 515, 524 (9th Cir.1989). However, the decisions of California appellate courts provide no controlling precedent on these issues of state law; thus, this case satisfies the criteria for certification. See Cal. Rules of Court 29.5(a)(3). Resolution of the state law issues involved in this litigation will have a substantial effect on California law and the citizens of California. Accordingly, principles of comity suggest that those decisions should be made by California courts. Thus, by separate order accompanying this decision, we certify these issues of state law to the Supreme Court of California and respectfully request the Court to accept certification.
 
 X
 
 74
 We affirm the judgment of the district court in all respects, except for the state law claims identified in section IX. We respectfully certify those issues to the Supreme Court of California. We stay further proceedings in this case pending a response from the Supreme Court of California on the request for certification.
 
 
 75
 AFFIRMED IN PART; CERTIFIED IN PART.
 
 ORDER
 
 76
 We respectfully certify the following questions to the Supreme Court of California all as set forth in the attached request:
 
 
 77
 1. Does the stipulated judgment approved by the district court violate § 368 of Assembly Bill 1890 (Act of September 23, 1996, 1996 Cal. Legis. Serv. 854, codified in Cal. Pub. Util. Code §§ 330-398.5)?
 
 
 78
 2. Do the procedures employed in entering the stipulated judgment violate the Bagley-Keene Open Meeting Act, Cal. Gov't Code §§ 11120-11132.5?
 
 
 79
 3. Does the stipulated judgment violate § 454 of the Public Utilities Code by altering utility rates without a public hearing and the issuance of findings?
 
 
 80
 We stay all further proceedings in this case in this Court and the district court pending receipt of the answers to the certified questions. If the Supreme Court of California declines certification, we will resolve the issues according to our perception of California law.
 
 
 81
 The Clerk of the Court is hereby directed to transmit, under the official seal of the Ninth Circuit, a copy of this order, the attached Request for Certification, and a copy of the opinion filed concomitantly with this Order. The parties and amici are directed to file with the Supreme Court of California copies of all briefs and excerpts of record submitted to this Court. This case is withdrawn from submission until further order of the Court.
 
 
 82
 REQUEST FOR CERTIFICATION DIRECTED TO THE SUPREME COURT OF CALIFORNIA
 
 
 83
 Pursuant to Rule 29.5 of the California Rules of Court, a panel of the United States Court of Appeals for the Ninth Circuit, before which this appeal is pending, hereby certifies to the Supreme Court of California the previously identified questions of law. The California courts provide no controlling precedent on these questions. The answers to the certified questions will be determinative of a part of this appeal. We respectfully request that the Supreme Court of California answer the certified questions presented below. Our phrasing of the issues should not restrict the Court's consideration of the issues.
 
 I. Caption of the Case
 The caption of the case is:
 
 84
 SOUTHERN CALIFORNIA EDISON COMPANY, Plaintiff-Appellee,
 
 
 85
 v.
 
 
 86
 LORETTA M. LYNCH; HENRY M. DUQUE; RICHARD A. BILAS; CARL W. WOOD; GEOFFREY F. BROWN, D.C. No. Commissioners of California Public Utilities Commission, Defendants-Appellees.
 
 
 87
 UTILITY REFORM NETWORK, Defendant-intervenor-Appellant.
 
 No. 01-56879
 
 88
 D.C. No. CV-00-12056-RSWL SOUTHERN CALIFORNIA EDISON COMPANY, Plaintiff-Appellee,
 
 
 89
 RELIANT ENERGY SERVICES, INC.; MIRANT AMERICAS ENERGY MARKETING, LP, Intervenors-Appellants,
 
 
 90
 v.
 
 
 91
 LORETTA M. LYNCH; HENRY M. DUQUE; RICHARD A. BILAS; CARL W. WOOD; GEOFFREY F. BROWN, Defendants.
 
 No. 01-56993
 D.C. No. CV-00-12056-RSWL
 
 92
 SOUTHERN CALIFORNIA EDISON COMPANY, Plaintiff-Appellee,
 
 
 93
 CALIFORNIA MANUFACTURERS AND TECHNOLOGY ASSN., Intervenor-Appellant,
 
 
 94
 v.
 
 
 95
 LORETTA M. LYNCH; HENRY M. DUQUE; RICHARD A. BILAS; CARL W. WOOD; GEOFFREY F. BROWN, in their official capacities as Commissioner of the California Public Utilities Commission, Defendants-Appellees.
 
 No. 01-57020
 D.C. No. CV-00-12056-RSWL
 Counsel for the parties are as follows:
 
 96
 Robert E. Finkelstein and Randolph L. Wu, The Utility Reform Network, San Francisco, California; Michael J. Strumwasser, Frederic D. Woocher, Johanna R. Shargel, Daniel J. Sharfstein, Strumwasser & Woocher LLP, Santa Monica, California; for the defendant-intervenor-appellant.
 
 
 97
 Gary M. Cohen, Arocles Aguilar, Harvey Y. Morris, and Carrie G. Pratt, Public Utilities Commission of the State of California, San Francisco, California, for the defendants-appellees.
 
 
 98
 Stephen Pickett, Barbara Reeves, and Kris G. Vyas, Southern California Edison Company, Rosemead, California; Ronald L. Olson, John W. Spiegel, and Henry Weissmann, Munger, Tolles & Olson LLP, Los Angeles, California; for the plaintiff-appellee.
 
 
 99
 Terry J. Houlihan and Geoffrey T. Holtz, McCutchen, Doyle, Brown & Enersen, LLP, San Francisco, California; John C. Morrissey and Brian I. Cheng, McCutchen, Doyle, Brown & Enersen, LLP, Los Angeles; California; for the intervenor-appellant Reliant Energy Services, Inc.
 
 
 100
 Bryan A. Merryman and Lisa A. Cottle, White & Case LLP, Los Angeles, California, for the intervenor-appellant Mirant Americas Energy Marketing, LP.
 
 
 101
 Keith R. McCrea and Jim Bushee, Sutherland Asbill & Brennan LLP, Washington, D.C., for the intervenor-appellant California Manufacturers and Technology Association.
 
 
 II. Questions of Law to be Answered
 
 
 102
 1. Does the stipulated judgment approved by the district court violate § 368 of Assembly Bill 1890 (Act of September 23, 1996, 1996 Cal. Legis. Serv. 854, codified in Cal. Pub. Util. Code §§ 330-398.5)?
 
 
 103
 2. Do the procedures employed in entering the stipulated judgment violate the Bagley-Keene Open Meeting Act, Cal. Gov't Code §§ 11120-11132.5?
 
 
 104
 3. Does the stipulated judgment violate § 454 of the Public Utilities Code by altering utility rates without a public hearing and the issuance of findings?
 
 III. Statement of Facts
 
 105
 A brief description of the factual background of this case is contained in the panel opinion that accompanies this Order.
 
 IV. The Need for Certification
 
 106
 All parties agree that the instant litigation is of the utmost importance to the California utility regulation and the California economy. We have resolved all of the pending federal questions. The only issues left for resolution are ones of state law. Federal courts are bound by the pronouncements of the state's highest court on applicable state law. Davis v. Metro Productions, Inc., 885 F.2d 515, 524 (9th Cir.1989). However, the decisions of California appellate courts provide no controlling precedent on these issues of state law; thus, this case satisfies the criteria for certification. See Cal. Rules of Court 29.5(a)(3). Resolution of the state law issues involved in this litigation will have a substantial effect on California law and the citizens of California, not only on the questions presented by this case, but in future state administrative proceedings. Therefore, principles of comity suggest that decisions about California state law be made by California courts.
 
 V. Accompanying Materials
 
 107
 The Clerk of the Court of the Ninth Circuit Court of Appeals has been directed to transmit, under the official seal of the Ninth Circuit a copy of the opinion filed concomitantly with this Order. The parties and amici have been directed to file with the Supreme Court of California copies of all briefs and excerpts of record submitted to the Ninth Circuit Court of Appeals.
 
 Sidney R. Thomas
 United States Circuit Judge
 
 
 Notes:
 
 
 [1]
 The legislation is summarized inCal. Exchange Corp. v. FERC (In re Cal. Power Exchange Corp.), 245 F.3d 1110, 1114-15 (2001).
 
 
 [2]
 The doctrine takes its name fromRooker v. Fid. Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Rooker held that federal statutory jurisdiction over direct appeals from state courts lies exclusively in the Supreme Court and is beyond the original jurisdiction of federal district courts. See Rooker, 263 U.S. at 415-16, 44 S.Ct. 149. Feldman held that this jurisdictional bar extends to particular claims that are "inextricably intertwined" with those a state court has already decided. See Feldman, 460 U.S. at 486-87, 103 S.Ct. 1303.
 
 
 [3]
 In fact, the district court in PG & E's case rejected the argument that PG & E's state court writ was res judicata of PG & E's federal claimsPac. Gas & Elec. Co. v. Lynch, No. CV 01-1083RSWLSHX, 2001 WL 840611, at *8 (C.D.Cal. May 2, 2001).
 
 
 [4]
 We also note that"Burford abstention is particularly inappropriate when the plaintiff's claim is based on preemption, because abstaining under Burford would be an implicit ruling on the merits." Morros, 268 F.3d at 705 (quoting Knudsen Corp. v. Nevada State Dairy Comm'n, 676 F.2d 374, 377 (9th Cir. 1982)). Here, SoCal Edison alleges that the federal filed-rate doctrine facially preempts any Commission refusal to permit recovery of SoCal Edison's wholesale procurement costs.