159 F.3d 405
 78 Fair Empl.Prac.Cas. (BNA) 724,
74 Empl. Prac. Dec. P 45,574, 41 Fed.R.Serv.3d 1547,
98 Cal. Daily Op. Serv. 7924,
98 Daily Journal D.A.R. 11,013
 Lesa L. DONNELLY and Ginelle O'Connor, for themselves and
all others similarly situated, Plaintiffs-Appellees,
v.
Daniel GLICKMAN, Secretary, U.S. Department of Agriculture
and G. Lynn Sprague, Regional Forester for Region
5, U.S. Forest Service, Defendants-Appellees.
v.
William P. LEVIS, William D. Spyrison, Alan Doerr, and
Donald Will, for themselves and all others
similarly situated, Appellants.
 No. 97-16648.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1998.
Decided Oct. 22, 1998.
 
 Louis Demas, Sacramento, California, for appellants.
 Brad Yamauchi, Minami, Lew & Tamaki, San Francisco, California, for plaintiffs-appellees.
 Adam Issenberg, Civil Division, United States Department of Justice, Washington, D.C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV 95-04389-DLJ.
 Before: BRUNETTI, TASHIMA, and GRABER, Circuit Judges.
 GRABER, Circuit Judge:
 
 
 1
 Two female employees brought this individual and class action, claiming that their employer had subjected them and other female employees to gender-based discrimination in violation of Title VII of the 1964 Civil Rights Act, as amended (Title VII), 42 U.S.C. § 2000e, et seq. Four male employees moved to intervene on behalf of themselves and all other employees not within the plaintiff class, either as of right (Fed.R.Civ.P. 24(a)(2)) or permissively (Fed.R.Civ.P. 24(b)(2)). The district court denied both motions. The proposed intervenors appeal. We affirm the former ruling and dismiss the appeal from the latter.
 
 FACTUAL AND PROCEDURAL HISTORY
 A. Prior Actions
 1. Female Employees
 
 2
 This is the second Title VII action brought by female employees of the United States Forest Service ("Forest Service") in Region 5. In 1973, a female employee sued on behalf of herself and similarly situated employees, claiming that the Forest Service in Region 5 had discriminated in making hiring and promotion decisions. The parties entered into a consent decree in 1979, which the district court approved in 1981. The terms of that decree were to remain in effect until 1986.
 
 
 3
 In 1986, the female employees' class filed a motion for contempt of court, in which they alleged that the Forest Service had not complied with the consent decree. The district court granted the motion and ordered the consent decree to remain in effect until 1991. In 1992, the parties agreed to a new settlement, which expired in 1994.
 
 2. Male Employees
 
 4
 In 1990, a group of male employees in Region 5 moved to intervene in the female employees' Title VII action. The district court denied their motion, holding that it was untimely. This court affirmed in an unpublished disposition. Bernardi v. Yeutter, 945 F.2d 408, 1991 WL 190106 (9th Cir.1991) (Table).
 
 
 5
 Thereafter, male employees brought a separate action against the Forest Service, challenging the terms of the consent decree. The district court dismissed that action holding, in part, that the male employees could not bring an independent action challenging the terms of a consent decree. Levitoff v. Espy, 1993 WL 557674 (N.D.Cal. Dec.14, 1993). This court affirmed that holding in an unpublished disposition. Levitoff v. Espy, 74 F.3d 1246, 1996 WL 14215 (9th Cir.1996) (Table). The male employees petitioned for a writ of certiorari, which the United States Supreme Court denied. Levitoff v. Glickman, --- U.S. ----, 117 S.Ct. 296, 136 L.Ed.2d 215 (1996).
 
 B. Current Action
 1. Plaintiffs' Action
 
 6
 On December 8, 1995, plaintiffs Lesa L. Donnelly and Ginelle O'Connor filed an individual and class action against the Forest Service. In the initial complaint, plaintiffs' class claims alleged that the Forest Service in Region 5 had subjected female employees to a gender-based hostile work environment and that it had discriminated against female employees in hiring, promotions, and training.[1] On February 15, 1996, plaintiffs filed a first amended complaint, in which they deleted their class claims respecting hiring, promotions, and training.
 
 
 7
 On February 24, 1997, the district court certified a class of plaintiffs to include:
 
 
 8
 All past and current non-supervisory female employees of the U.S. Forest Service Region 5 who have been or are subject to a sexually hostile work environment at any time since [February 1, 1994,] and who are seeking equitable relief only.
 
 
 9
 In its order certifying the class, the district court noted that plaintiffs had abandoned their class claims that the Forest Service discriminated against women in hiring, promotions, and training. On March 6, 1997, plaintiffs amended their complaint again to include the class claims that the district court had certified.
 
 
 10
 Even though plaintiffs had abandoned their underlying claims for discrimination in hiring, promotions, and training, the second amended complaint retained a remedial request for affirmative action in hiring, work assignments, and promotions. In particular, plaintiffs sought an injunction:
 
 
 11
 Requiring defendants to abolish sex discrimination, sexual harassment, hostile work environment for women, and reprisal against women hired under the Bernardi consent decree or who have complained of sex discrimination by means of an affirmative action plan establishing goals and timetables for the implementation of all actions necessary to assure an end to all such sex discrimination and reprisal against the class members[.]
 
 2. Motion to Intervene
 
 12
 On May 14, 1997, four male employees of the Forest Service in Region 5 moved to intervene on behalf of themselves and all other employees not within the plaintiff class. The proposed intervenors sought to intervene pursuant to Fed.R.Civ.P. 24(a)(2) (intervention as of right) and 24(b)(2) (permissive intervention). They argued that they were asserting their own affirmative claims of gender-based discrimination and that any remedy that plaintiffs might obtain could affect them.
 
 C. District Court's Decision
 
 13
 The district court denied the motions to intervene. The court held that the proposed intervenors could not intervene as of right in either the liability or remedial phase of plaintiffs' action. The district court also denied the request for permissive intervention.
 
 D. Oral Argument
 
 14
 During oral argument before this court, plaintiffs expressly waived their right to any affirmative action remedy involving hiring, work assignments, or promotions. Instead, plaintiffs limited their remedies to those listed in the district court's written order denying intervention:
 
 
 15
 [P]laintiffs request that the defendants be ordered to take specific actions to remedy the hostile nature of the work environment, including: (1) dedicating significant funding and staff to implement all changes resulting from the parties' legal settlement within two years; (2) removing or demoting all managers in Region 5 who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate harassment; (3) establishing compliance with Equal Employment Opportunity ("EEO") guidelines as a critical element of manager performance standards; (4) creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's EEO process; (5) training all employees on EEO issues; and (6) eliminating the backlog of current EEO cases alleging discrimination, harassment, and reprisal against women.
 
 INTERVENTION AS OF RIGHT
 A. Jurisdiction
 
 16
 A district court's denial of a motion for intervention as of right is an appealable "final decision." League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir.1997) (LULAC ). Therefore, we have jurisdiction to review such a denial pursuant to 28 U.S.C. § 1291.[2] Id.
 
 B. Standard of Review
 
 17
 We review a district court's denial of a motion for intervention as of right de novo, except that we review questions of timeliness for abuse of discretion. Id.
 
 C. Elements
 
 18
 Fed R. Civ. P. 24(a)(2) governs intervention as of right:
 
 
 19
 Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 20
 An applicant seeking intervention as of right must show that: (1) it has a "significant protectable interest" relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest. Cabazon Band of Mission Indians v. Wilson, 124 F.3d 1050, 1061 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 2319, 141 L.Ed.2d 694 (1998).
 
 
 21
 In determining whether intervention is appropriate, we are guided primarily by practical and equitable considerations. We generally interpret the requirements broadly in favor of intervention. See United States ex rel. McGough v. Covington Techs. Co., 967 F.2d 1391, 1394 (9th Cir.1992) ("Generally, Rule 24(a)(2) is construed broadly in favor of proposed intervenors and we are guided primarily by practical considerations.") (internal quotation marks and citation omitted).
 
 D. Liability Phase of Plaintiffs' Action
 
 22
 The district court denied intervention in the liability phase of plaintiffs' class action on the grounds that the proposed intervenors lacked a significant protectable interest in plaintiffs' action and that denying intervention would not impair the interests of the proposed intervenors. On de novo review, we agree with the first ground and, therefore, need not reach the second.
 
 
 23
 The proposed intervenors argue that their independent claims for gender-based discrimination give them a significant protectable interest in plaintiffs' class action.[3] An applicant has a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. Northwest Forest Resource Council v. Glickman, 82 F.3d 825, 837 (9th Cir.1996).
 
 
 24
 The proposed intervenors' independent claims of gender-based discrimination undeniably are covered by Title VII. However, their claims of discrimination against male employees are unrelated to plaintiffs' particular claims of "hostile-work-environment" discrimination against female employees. It is not enough that both groups assert discrimination claims against the same defendants.
 
 
 25
 An applicant generally satisfies the "relationship" requirement only if the resolution of the plaintiff's claims actually will affect the applicant. See Montana v. United States Envtl. Protection Agency, 137 F.3d 1135, 1141-42 (9th Cir.1998) (holding that the proposed intervenors lacked a "significant protectable interest," because they did not have the type of permit that was the subject of the plaintiffs' action), cert. denied, --- U.S. ----, 119 S.Ct. 275, --- L.Ed.2d ---- (1998); Greene v. United States, 996 F.2d 973, 976-78 (9th Cir.1993) (holding that an applicant lacked a "significant protectable interest" in an action when the resolution of the plaintiff's claims would not affect the applicant directly). Plaintiffs' action focuses exclusively on whether the Forest Service in Region 5 subjected female employees to a hostile work environment. Resolution of plaintiffs' action, therefore, will not affect the proposed intervenors' claims that the Forest Service subjected male employees to discriminatory treatment. Thus, the proposed intervenors do not have a "significant protectable interest" in the liability phase of plaintiffs' action.
 
 E. Remedial Phase of Plaintiffs' Action
 
 26
 Although the proposed intervenors lack an interest in the liability phase of plaintiffs' action, in theory they still could intervene in the remedial phase of the action. See Churchill County v. Babbitt, 150 F.3d 1072, 1083 (9th Cir.1998) ("[T]he district court did not err by limiting its intervention only to the remedial phase" when the applicant had no interest in the liability phase of the action.); Forest Conservation Council v. United States Forest Serv., 66 F.3d 1489, 1499 & n. 11 (9th Cir.1995) (The applicants "are entitled to intervene as of right under Fed.R.Civ.P. 24(a)(2) in the portion of the proceedings addressing the injunctive relief sought by plaintiffs ... [even though they] cannot claim any interest that relates to the issue of the [defendant's] liability.").[4]
 
 
 27
 The district court denied intervention in the remedial phase of plaintiffs' action on two grounds: that the motion to intervene was premature and that plaintiffs might never obtain any remedy that could affect the proposed intervenors. We affirm instead on the ground that the proposed intervenors lack a "significant protectable interest"[5] in any of plaintiffs' potential remedies. See Herring v. Federal Deposit Ins. Corp., 82 F.3d 282, 284 (9th Cir.1995) ("We may affirm on any basis the record supports, including one the district court did not reach."), cert. denied, --- U.S. ----, 117 S.Ct. 581, 136 L.Ed.2d 512 (1996).
 
 
 28
 The proposed intervenors contend mainly that they have a significant protectable interest in plaintiffs' class request for affirmative action in hiring, work assignments, and promotions, found in the prayer for relief of the second amended complaint. We need not address that contention. As noted, at oral argument, plaintiffs expressly waived their right to seek or receive any such remedies. Plaintiffs' waiver eliminates the possibility of their obtaining those remedies in this action.
 
 
 29
 Our holding is consistent with Forest Conservation Council. There, the plaintiffs stated at oral argument that they wanted to modify their request for injunctive relief so that it would not implicate a significant protectable interest of the applicant. Forest Conservation Council, 66 F.3d at 1497 n. 9. The court held that it must consider the remedy as requested in the pleadings. Id. The court noted, however, that the district court could consider whether the modification eliminated the applicant's interest in the remedy after the plaintiffs actually modified their request for injunctive relief. Id.
 
 
 30
 In Forest Conservation Council, the court refused to rely on a potential modification of the request for injunctive relief, because there was no certainty about whether a modification would occur and what effect it might have on the applicant's interest if it did occur. Unlike in Forest Conservation Council, here no uncertainty remains. We know that a waiver has occurred, and we know what effect that waiver has on the proposed intervenors' interest in the affirmative action remedies. Because plaintiffs' waiver eliminates all such remedies from the action, the now-nonexistent remedies cannot implicate a significant protectable interest of the proposed intervenors.
 
 
 31
 The proposed intervenors do not (and cannot successfully) argue that the other remedial requests facially implicate their significant protectable interests. Those remedies seek to: (1) improve the promptness of the Forest Service's response to female employees' complaints of harassment and reprisal; (2) create a new process for investigating such complaints; (3) discipline managers who harass female employees or who fail to investigate complaints of such harassment; (4) consider EEO compliance when evaluating the performance of managers; (5) train employees about EEO issues; and (6) fund the foregoing efforts. The proposed intervenors give two reasons why intervention is required nevertheless. Neither of these reasons persuades us.
 
 
 32
 First, the proposed intervenors argue that the listed remedies could go beyond ending harassment of female employees to create discrimination against male employees. That possibility is not inherent in any of the requested remedies. When an applicant's purported interest is so tenuous, intervention is inappropriate. See Benny v. England (In re Benny), 791 F.2d 712, 721 (9th Cir.1986) ("This possibility that our decision could affect [the applicants'] interests is too tenuous to entitle them to intervene [as] of right."). See also Forest Conservation Council, 66 F.3d at 1494 (holding that, to entitle a third party to intervene, the plaintiff's requested remedy must have a "direct, immediate, and harmful effect[ ]" on the third party's legally protectable interest).
 
 
 33
 Second, the proposed intervenors argue that they also deserve the kinds of remedies that plaintiffs have requested. As discussed above, an applicant's mere desire to obtain similar relief is insufficient, by itself, to necessitate intervention.
 
 
 34
 The proposed intervenors also argue that they have an interest in Donnelly's and O'Connor's individual remedial requests involving work assignments and promotions. However, the proposed intervenors have no protectable interest in positions that they may have obtained due to specific discriminatory employment decisions. See Dilks v. Aloha Airlines, Inc., 642 F.2d 1155, 1157 (9th Cir.1981) (per curiam) ("It is, of course, true that whenever someone is discharged, those junior to him may improve their seniority, and, if a reinstatement is required, the juniors will revert to a lesser seniority. But the juniors have no legally protectable right to benefit from an invalid discharge.") (citation omitted).
 
 
 35
 We conclude that the district court did not err in denying the motion to intervene as of right. Accordingly, we affirm that decision.
 
 PERMISSIVE INTERVENTION
 A. Jurisdiction and Standard of Review
 
 36
 We have jurisdiction over the district court's denial of permissive intervention only if the district court abused its discretion in reaching that decision. LULAC, 131 F.3d at 1307-08. This court explained the jurisdictional requirement in LULAC:
 
 
 37
 [I]n determining its jurisdiction, a reviewing court must--despite the seemingly "cart-before-the-horse" nature of the inquiry--first decide whether the district court abused its discretion in denying the motion. If it finds an abuse of discretion, it retains jurisdiction and must reverse; if it determines, on the other hand, that no abuse of discretion has occurred, it must dismiss the appeal for want of jurisdiction.
 
 
 38
 Id. (emphasis in original).
 
 B. Elements
 
 39
 Fed R. Civ. P. 24(b)(2) governs permissive intervention:Upon timely application anyone may be permitted to intervene in an action ... when an applicant's claim or defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
 
 
 40
 An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. Northwest Forest Resource Council, 82 F.3d at 839.
 
 
 41
 Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention. See Orange v. Air Cal., 799 F.2d 535, 539 (9th Cir.1986) ("Permissive intervention is committed to the broad discretion of the district court."); Spangler v. Pasadena City Board of Educ., 552 F.2d 1326, 1329 (9th Cir.1977) (identifying nonexclusive discretionary factors that the district court may consider when deciding whether to grant permissive intervention). In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties. See Fed.R.Civ.P. 24(b)(2) (so providing); Venegas v. Skaggs, 867 F.2d 527, 530 (9th Cir.1989) (so holding), aff'd on other grounds, Venegas v. Mitchell, 495 U.S. 82, 110 S.Ct. 1679, 109 L.Ed.2d 74 (1990).
 
 C. Analysis
 
 42
 The proposed intervenors sought permissive intervention only in the liability phase of plaintiffs' action. See Fed.R.Civ.P. 24(b)(2) (intervention may be permitted "when an applicant's claim or defense and the main action have a question of law or fact in common"). The district court denied that request. In exercising its discretion to deny the request for permissive intervention, the district court relied on three factors.
 
 
 43
 First, the court held that the proposed intervenors' and plaintiffs' claims share no common factual proof. See Spangler, 552 F.2d at 1329 (noting that a district court may analyze the relationship between the plaintiff's action and the applicant's claims in deciding whether to exercise its discretion to grant intervention). See also Deus v. Allstate Ins. Co., 15 F.3d 506, 525 (5th Cir.1994) ("The intervention rule is ... not intended to allow the creation of whole new lawsuits by the intervenors.").
 
 
 44
 Second, the district court observed that the interests of plaintiffs and the proposed intervenors "are in direct opposition," resulting in prejudice to existing parties. Under the circumstances, the court reasoned, requiring plaintiffs to litigate their claims with the proposed intervenors as co-plaintiffs would harm plaintiffs.
 
 
 45
 Third, the court relied on the factor of undue delay of the main action. Because of the foregoing differences between the proposed intervenors and plaintiffs, allowing intervention "would only serve to undermine the efficiency of the litigation process."
 
 
 46
 The district court did not abuse its discretion when it denied permissive intervention for those reasons. That being so, we lack jurisdiction over the district court's decision.
 
 CONCLUSION
 
 47
 The district court's denial of intervention as of right (Fed.R.Civ.P. 24(a)(2)) is AFFIRMED. The appeal from the district court's denial of permissive intervention (Fed.R.Civ.P. 24(b)(2)) is DISMISSED.
 
 
 
 [1]
 Plaintiffs Donnelly and O'Connor also brought individual claims alleging, in part, that the Forest Service had discriminated against them in making specific decisions about work assignments and promotions
 
 
 [2]
 Title 28 U.S.C. § 1291 provides in part:
 The court of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court.
 (Emphasis added).
 
 
 [3]
 The proposed intervenors do not argue that they can intervene in the liability phase of the action because of Donnelly's and O'Connor's individual claims
 
 
 [4]
 In Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 528 (9th Cir.1983), the court held that an applicant's interest is determined not by the particular issue before the court but, instead, by the applicant's interest in the action as a whole. To the extent that Sagebrush Rebellion suggested that a district court cannot permit intervention in the remedial phase of an action only, its reach has been limited by the later decisions cited in the text
 
 
 [5]
 Title 42 U.S.C. § 2000e-2(n) generally bars independent challenges to remedial orders in employment discrimination actions but expressly states that the statute shall not "alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure." 42 U.S.C. § 2000e-2(n)(2)(A). Thus, Congress' decision to give preclusive effect to Title VII remedial orders did not eliminate the "significant protectable interest" requirement of Fed.R.Civ.P. 24(a)(2)